# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN WADSWORTH**, individually and as trustee for the **RBT VICTIM RECOVERY TRUST**,<br><br>    Plaintiff,<br><br>  v.<br><br>**RONALD B. TALMAGE**, an individual, **ANNETTE C. TALMAGE**, an individual, **RIVERCLIFF FARM, INC.**, an Oregon corporation, **NEW CENTURY PROPERTIES LTD.**, a foreign corporation, **UNITED STATES OF AMERICA**, and **MULTNOMAH COUNTY**, a political subdivision,<br><br>    Defendants. | Case No. 3:16-cv-2082-SI<br><br>**OPINION AND ORDER** |

Thomas A. Ped, WILLIAMS, KASTNER GREENE & MARKLEY, 1515 SW Fifth Avenue, Suite 600, Portland, OR 97201; William B. Ingram and Alan R. Houston, STRONG & HANNI, PC, 102 South 200 East, Suite 800, Salt Lake City, UT 84111. Of Attorneys for Plaintiff John Wadsworth, individually and as trustee for the RBT Victim Recovery Trust.

David A. Hubbert, Acting Assistant Attorney General; Lindsay L. Clayton, Jennifer Y. Golden, and Alex Halverson, Trial Attorneys, UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION, P.O. Box 683, Ben Franklin Station, Washington, DC 20044; Billy J. Williams, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Defendant United States of America.

**Michael H. Simon, District Judge.**

Plaintiff John Wadsworth ("Wadsworth"), individually and as trustee for the RBT Victim Recovery Trust (collectively, the "Trust"), has sued Ronald B. Talmage ("Talmage"), Annette C. Talmage, RiverCliff Farm, Inc. ("RFI"), New Century Properties Ltd. ("NCPL"), the United States of America (the "United States"), and Multnomah County (collectively, "Defendants"), seeking to quiet title in real property located at 35701 NE Chamberlain Road in Corbett, Oregon (the "RiverCliff Property"). The only claim that the Trust asserts against the United States is to quiet title. The United States moves to dismiss that claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons that follow, the motion is granted.

## STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, --- U.S. ---, 133 S. Ct. 1059, 1064 (2013) (citation omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H*

---

[1] The Trust brings its quiet title claim against all Defendants. The Trust also brings claims for fraud, breach of fiduciary duty, conversion, money had and received, and unjust enrichment only against Talmage.

*Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

**B.  Motion to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

At its core, this is a lawsuit to quiet title to real property. Both the Trust and the United States assert rights against the RiverCliff Property. The Trust is composed of victims of an alleged Ponzi scheme conducted by Talmage.

As alleged in the Second Amended Complaint ("SAC") (ECF 39), in November 1997, Talmage and his then-spouse, Kumiko Talmage, purchased the RiverCliff Property. SAC ¶ 16. The down payment for the Property was made with funds stolen from Talmage's then-investor clients. *Id*. The balance of the purchase price was paid in full in February 1998. *Id*. None of these earlier investor clients include any of the beneficiaries of the Trust. SAC ¶¶ 16-18. In 2001, Talmage divorced Kumiko and agreed to pay $1.4 million for her half-interest in the RiverCliff Property, but he did not pay her or receive her interest in the Property at that time. SAC ¶ 18.

Beginning in 2002, Talmage began receiving funds from the beneficiaries of the Trust, allegedly through false pretenses and embezzlement. SAC ¶ 17. These funds were used to make improvements on the RiverCliff Property and to pay pre-2002 investor clients whose funds were used to acquire the property in 1997 and to improve it thereafter. SAC ¶¶ 17, 26. On January 21, 2005, Talmage, acting through NCPL, paid $1.5 million to Kumiko Talmage, and she conveyed to Talmage her half-interest in the RiverCliff Property. SAC ¶ 18. Talmage used money fraudulently received from the Trust's beneficiaries to pay Kumiko. *Id*. By February 2005, Talmage claimed sole ownership over the RiverCliff Property. *Id*. On June 30, 2005, Talmage conveyed title to the RiverCliff Property to RFI, a subsidiary of NCPL. SAC ¶ 19. Talmage controlled both RFI and NCPL. SAC ¶¶ 12, 19. After the conveyance, Talmage continued to reside in and use the RiverCliff Property as his own. SAC ¶ 19.

The United States claims that Talmage and his current spouse, Annette Talmage (collectively, the "Talmages") failed to pay federal income taxes for the 1998-2005 and 2007 tax

years. SAC ¶ 33. The United States filed notices of federal tax liens on September 17, 2008; November 28, 2008; May 20, 2013; and January 31, 2014. *Id*. In related litigation, the United States seeks to foreclose its tax liens on the RiverCliff Property under the theory that Talmage's transfer of the RiverCliff Property to RFI was fraudulent or done for the purpose of avoiding his tax liabilities. SAC ¶ 36. The Trust does not dispute the amount of the Talmages' tax liabilities. SAC ¶ 35. The Trust also does not dispute that RFI "is not a bona fide purchaser and can have no better title to the [RiverCliff] [P]roperty than Talmage." SAC ¶ 37. The Trust asserts, however, that "[b]ecause Talmage never had title to the funds he embezzled, Talmage also never had valid title to the RiverCliff Property, which was acquired and improved with the proceeds of the embezzled funds." SAC ¶ 37. Thus, argues the Trust, the federal tax liens "never attached to the RiverCliff Property." SAC ¶ 38.

The Trust commenced this lawsuit on October 28, 2016. ECF 1. In the first motion to dismiss filed by the United States, the Government argued that, among other things, the Trust has not established standing to sue the United States. ECF 19. The Court granted the Government's motion to dismiss and gave the Trust leave to replead. ECF 36. On March 13, 2017, the Trust obtained a $90 million judgment (after trebling) against Talmage in Utah state court and later registered that judgment in Oregon state court. SAC ¶¶ 30-32.

## DISCUSSION

The Government moves to dismiss the Trust's quiet title claim against the United States on two alternative grounds. First, the United States argues that the Court continues to lack subject matter jurisdiction because the Trust did not have Article III standing at the commencement of this action. Second, the Government argues that the Trust cannot quiet title to the RiverCliff Property as a matter of law based on the allegations contained in the Second Amended Complaint.

## A. Standing

The Court dismissed the original Complaint because it contained no allegation that the Trust's beneficiaries had assigned their claims to Wadsworth or the Trust. ECF 36. Thus, the Trust did not properly allege Article III standing. Although the Second Amended Complaint alleges that "[e]ach beneficiary, including Mr. Wadsworth, has assigned his, her or its right, title and interest in the claims herein to Mr. Wadsworth as trustee of the Victim Trust," SAC ¶ 1, the United States argues that this allegation continues to be insufficient because it does not allege when the assignment occurred. If the assignment occurred after the Trust filed the original Complaint, the United States argues, the Trust did not have Article III standing at the time the Trust filed the original Complaint. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) ("The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint.").

The Court concludes, however, that the Second Amended Complaint adequately alleges standing. In its Order dismissing the original Complaint, the Court allowed the Trust to file an amended complaint to allege when the Trust's beneficiaries assigned their claims to Wadsworth or the Trust. ECF 36. The Court construes its Order as also granting the Trust leave to file a supplemental pleading under Rule 15(d) of the Federal Rules of Civil Procedure. Because the Trust alleges that the assignment occurred before it filed the Second Amended Complaint, the Trust now adequately alleges standing. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015) (noting that "Rule 15(d) permits a supplemental pleading to correct a defective complaint and circumvents 'the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief'" (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1505 (3d ed. 2015)).

## B. Quiet Title

To determine whether the Trust has stated a valid claim to quiet title to the RiverCliff Property, the Court begins by analyzing the present ownership of the RiverCliff Property within the meaning the words "property" and "rights to property" contained in the tax lien statute, 26 U.S.C. § 6321 ("§ 6321"). The Trust argues that it adequately alleges that its beneficiaries presently own the RiverCliff Property. The United States responds that Talmage, as the owner of the RiverCliff Property, conveyed title to RFI, as his nominee[2] or alter ego. If the Trust is correct, then the Trust states a valid claim to quiet title. If, however, the United States is correct and RFI holds legal title to the RiverCliff Property as Talmage's nominee or alter ego, then the Court must determine whether the existing federal tax liens have priority over any interest asserted by the Trust's beneficiaries.

### 1. Ownership of the RiverCliff Property

The Trust does not allege that its beneficiaries hold legal title to the RiverCliff Property—or have ever held legal title to the RiverCliff Property, lived in that property, or used that property on a regular basis. Rather, the Trust argues that it has sufficiently alleged that its beneficiaries currently own the Property under either the equitable theory of resulting trust[3] or the equitable theory of constructive trust.[4] SAC ¶¶ 40, 43. These are legal conclusions couched

---

[2] As defined in *Black's Law Dictionary* 1149 (9th ed. 2009), "nominee" means, among other things, "[a] party who holds bare legal title for the benefit of others."

[3] According to *Black's Law Dictionary* 1653 (9th ed. 2009), a "resulting trust" is "[a] remedy imposed by equity when property is transferred under circumstances suggesting that the transferor did not intend for the transferee to have the beneficial interest in the property."

[4] According to *Black's Law Dictionary* 1649 (9th ed. 2009), a "constructive trust" is "[a]n equitable remedy that a court imposes against one who has obtained property by wrongdoing."

as factual allegations. Thus, the Court need not assume for purposes of the pending motion to dismiss that these conclusions are true. *Iqbal*, 556 U.S. at 678-79.

In this case, the United States asserts a tax lien against real property under 26 U.S.C. § 6321. That statute provides, in relevant part:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States *upon all property and rights to property . . . belonging to such person*.

26 U.S.C. § 6321 (emphasis added). Thus, the starting point is whether and to what extent Talmage had property or rights to property, specifically the RiverCliff Property, to which the federal tax liens may attach. *See Aquilino v. United States*, 363 U.S. 509, 512 (1960) (holding that "[t]he threshold question . . . in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach" (quoting 26 U.S.C. § 6321)).

Courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach" and then "determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of" § 6321. *Drye v. United States*, 528 U.S. 49, 58 (1999); *see also United States v. Craft*, 535 U.S. 274, 278-79 (2002) ("State law determines only which sticks are in a person's bundle. Whether those sticks qualify as 'property' for purposes of the federal tax lien statute is a question of federal law."). Courts "must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them." *Craft*, 535 U.S. at 279. Moreover, under federal law, "'[t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property.'" *Drye*, 528 U.S. at 61 (alterations in original) (quoting *Morgan v. Comm'r of Internal Revenue*, 309 U.S. 78, 83 (1940)). Thus, in

*Craft*, the Supreme Court held that a husband's interest in entireties property constituted "property" or "rights to property"—and was reachable by the IRS—because of the substantial control the husband exercised over the property, even though state law made the property not subject to a tax levy. *See* 535 U.S. at 283, 288.

### a. Talmage's Acquisition of Property Rights

To determine whether Talmage had "rights" to the RiverCliff Property within the meaning of § 6321, the Court begins by considering what rights Talmage allegedly had in that property under Oregon law. *See Drye*, 528 U.S. at 58. Under Oregon law, an interest in land may be created "by operation of law or by a conveyance or other instrument in writing." Or. Rev. Stat. § 93.020. Talmage purchased the property in 1997, acquired title by conveyance, and then conveyed that title to RFI. SAC ¶¶ 16, 19. Because Talmage acquired title, under Oregon law he acquired an interest in the RiverCliff Property. Further, he could have extinguished any possible rights that his alleged victims may have had in the RiverCliff Property by transferring it to a bona fide purchaser for value. *See Tupper v. Roan*, 349 Or. 211, 223 (2010). Talmage also could have encumbered the RiverCliff Property. *See Evergreen W. Bus. Ctr., LLC v. Emmert*, 354 Or. 790, 792, 805 (2014) (acknowledging that a defendant who had fraudulently obtained property had also "encumbered the property with a $900,000 loan" that was repaid from the sale proceeds). In addition to the rights that Oregon law expressly permitted Talmage to exercise over the RiverCliff Property, Talmage also lived at the Property and improved it, even after conveying title to RFI. SAC ¶¶ 17, 19. Moreover, Talmage's alleged use of embezzled funds to acquire and improve the RiverCliff Property "caused him to incur federal income tax liability." SAC ¶ 37. These facts further show that Talmage exercised a substantial degree of control over the RiverCliff Property. *See Drye*, 528 U.S. at 61.

### b. Resulting or Constructive Trust

The Trust does not allege that any of its beneficiaries ever possessed title, lived on the RiverCliff Property, or exercised any control over it. Rather, the Trust argues that it "owns" the RiverCliff Property based on either a "resulting trust" or a "constructive trust" because Talmage "acquired or improved" the RiverCliff Property with funds embezzled from and belonging to the beneficiaries of the Trust. Although the Court finds that the Trust's factual allegations could support an eventual claim justifying the judicial imposition of a constructive trust over the RiverCliff Property, the Trust's allegations do not show that the Trust's beneficiaries currently own the RiverCliff Property in either constructive or resulting trust under Oregon law.

In Oregon, resulting and constructive trusts are two types of implied trusts created "by operation of law." *Shipe v. Hillman*, 206 Or. 556, 562 (1955). "A resulting trust arises where property is transferred under circumstances which give rise to an inference that the person who makes the transfer or causes it to be made, does not intend the transferee to take beneficial interest in the property." *Id.* at 564. For example, a resulting trust may arise "where property is purchased with the money of another, although the title is not taken in such another's name." *Id.*; *see also Estate of Hurlbutt v. Hurlbutt*, 36 Or. App. 721, 724 (1978) (observing that a resulting trust "arises under the doctrine of presumed intent that the party who furnished the purchase price of a parcel of land contemplated that such property would inure to his own benefit and not that of the record title holder and that the title was taken in the name of another for some incidental purpose").

A constructive trust, on the other hand,

> arises where a conveyance is induced on the agreement of a fiduciary or confident to hold in trust for a reco[n]veyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely, and where the agreement is breached, since the breach of the agreement is an

> abuse of the confidence and it is not necessary to establish such a
> trust to show fraud or intent not to perform the agreement when it
> was made.

*Shipe*, 206 Or. at 565; *see also Tupper*, 349 Or. at 220  (holding that "equity may impress a

constructive trust on property 'obtained through actual fraud, misrepresentations, concealments,

or through undue influence, duress, taking advantage of one's weakness or necessities, or

through any other similar means or under any other similar circumstances which render it

unconscientious for the holder of the legal title to retain and enjoy the beneficial interest'"

(emphasis omitted) (quoting *Suitter v. Thompson*, 225 Or. 614, 625 (1960)). Most significantly, a

constructive trust "must be derived only from conditions existing at the time of the conveyance

and cannot be supplied from circumstances established by subsequent events." *Shipe*, 206 Or.

at 570.

The Second Amended Complaint does not contain factual allegations sufficient to

support the conclusion that the Trust's beneficiaries currently have a resulting or constructive

trust over the Property. Under Oregon law, such trusts must be proven "by strong, clear and

convincing evidence." *Albino v. Albino*, 279 Or. 537, 550 (1977). The Trust does not allege that

its beneficiaries have already proven their entitlement to such trusts. Further, such trusts must

also be imposed "by operation of law" as an equitable remedy. Or. Rev. Stat. § 93.020(1); *see*

*Evergreen*, 354 Or. at 797 (holding that a constructive trust "does not stand on its own as a

substantive claim, but exists solely as an equitable remedy"); *Shipe*, 206 Or. at 562 (stating that

resulting and constructive trusts are imposed "by operation of law"). The well-pleaded facts

alleged by the Trust do not show that any court has already imposed a constructive or resulting

trust as an equitable remedy for Talmage's alleged fraud.

Moreover, the Trust's beneficiaries do not currently own the Property because the

transactions in which they "entrusted" their funds to Talmage are merely voidable, not void,

under Oregon law. SAC ¶ 27. "Where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or *material misrepresentation*, the transaction is voidable as against the latter and all who stand in no better position.'" *Weiss v. Gumbert*, 191 Or. 119, 136 (1951) (quoting *Restatement (First) of Contracts* § 476(1)); *cf. Akins v. Vermast*, 150 Or. App. 236, 241 n.7 (1997) ("If fraud is '*in factum*,' such as a forged deed or a situation analogous to forgery, the deed is void *ab initio* and will not support subsequent title in any person. By contrast, if fraud is in the inducement, the deed is merely voidable, and a bona fide purchaser may acquire good title."). The Trust alleges that Talmage made fraudulent representations to the Trust's beneficiaries with the "specific intent and purpose to fraudulently induce clients to entrust their money to him." SAC ¶ 27. The Trust alleges that its beneficiaries "relied reasonably" on Talmage's representations and "entrusted" funds to him. SAC ¶ 27. The Trust, however, does not allege that any court already has voided these transactions with Talmage.

Instead, the Trust argues that, under Oregon law, a constructive or resulting trust immediately and automatically arose at the time that Talmage acquired the RiverCliff Property. The Trust relies on the law applicable to resulting trusts discussed in *Certified Mortgage Co. v. Shepherd*, 115 Or. App. 228 (1992) ("A resulting trust arises *at the time of the transfer of title* . . . ."), and *Shipe*, 115 Or. App. at 235 ("If a resulting trust arises at all it must be at the time of the conveyance" because "[t]he law is constantly operant, and without delay attaches the consequences to be derived from the acts of the parties"). The Second Amended Complaint, however, does not state a claim for which a resulting trust is the proper remedy. In *Shepherd*, for example, the court found that a resulting trust arose between a company and a property owner when the company held the owner's property for the sole purpose of transferring it to the owner

or reselling it on the owner's behalf. 115 Or. App. at 235. Because the court in that case found that the trust arose before the company's judgment creditors sought to attach their judgment liens to the property, which was several years before the court recognized the trust, the court held that the judgment liens did not attach. *Id.* The facts of *Shepherd* differ from those described in the Second Amended Complaint. Here, the Trust's beneficiaries "relied reasonably upon Talmage's representations" that he would invest their funds in his "purported investment fund." SAC ¶¶ 25, 27. Talmage's use of the funds for "investment in and improvement of the RiverCliff Property" were "for his own purposes." SAC ¶ 21. Thus, the Trust's beneficiaries did not have the "intent" that Talmage's purchase and improvement of the RiverCliff Property "would inure to [their] own benefit." *See Hurlbutt*, 36 Or. App. at 724.

Moreover, the proposition that a constructive trust could pre-date the judicial order in which a court imposes it conflicts with the Oregon Supreme Court's decision in *Evergreen*, which held that a constructive trust is an "equitable remedy" that can "*divest* an individual who has been unjustly enriched of property." 354 Or. at 797 (emphasis added). A court would be unable to "divest" the wrongdoer of his property if a constructive trust "pre-dated" the litigation. In such a circumstance, a constructive trust would not be an equitable *remedy*.[5]

---

[5] The Trust argues that "[i]t is an elementary mistake to suppose that a court creates the [constructive] trust." *United States v. $4,224,958.57*, 392 F.3d 1002, 1004 (9th Cir. 2004); *cf. In re Leitner*, 236 B.R. 420, 424 (Bankr. D. Kan. 1999); *see Restatement (Third) of Restitution and Unjust Enrichment* § 55 cmt. e ("[T]he words ["constructive trust"] are no more than a judicial shorthand describing the parties' preexisting interests in particular property."). According to the *Restatement*, there are two ways of conceptualizing a constructive trust, either the trust "'exists' from the moment of the transaction on which restitution is based" or it "arises on the date of judgment" and "'relates back' to the transaction between the parties." *Restatement (Third) of Restitution and Unjust Enrichment* § 55 cmt. e. Either way, a constructive trust protects the beneficiary "from the moment the trustee acquires legal title." *Id.* Thus, the *Restatement* advises, "the misleading proposition that a constructive trust does not 'exist' until it is judicially declared proves in the end to be only a quarrel—lightly disguised—with the priority that the remedy is intended to afford." *Id.* In the federal tax context, however, lien priority is a matter of federal

Even if, under Oregon law, a resulting or constructive trust imposed as a remedy in this litigation would arise on the RiverCliff Property as of when Talmage acquired it, such a trust would not grant the Trust any "rights" in the RiverCliff Property under § 6321. This is because Talmage, not the Trust, exercised "control" over that Property when he acquired it. *Drye*, 528 U.S. at 61. The Court finds persuasive the Second Circuit's decision in *SEC v. Levine*, 881 F.2d 1165 (2d Cir. 1989). In *Levine*, the IRS sought to recover the tax liabilities of Levine and Wilkins from assets that they acquired through illegal trading activities that were later disgorged into receivership. *Id.* at 1174. Agreeing with the investors defrauded by Levine and Wilkins, the district court held that the assets acquired by Levine and Wilkins were "analogous to funds which have been embezzled or misappropriated." *SEC v. Levine*, 689 F. Supp. 317, 321 (S.D.N.Y. 1988). Thus, the district court imposed constructive trusts over the disgorged assets in favor of the defrauded investors, finding that "neither [Levine or Wilkins] ever had such property interest in the funds to which tax liens could have attached." *Id.* at 322.

The Second Circuit reversed, explaining in *dicta*[6] that the fact that the defendants obtained the disgorged assets through transactions that allegedly violated the Securities Exchange Act of 1934 rendered the transactions voidable, not void. *Levine*, 881 F.2d at 1175. Because "federal law [did] not make the unlawful securities transactions void, but merely voidable," the Second Circuit "look[ed] to state law to see what property rights are conferred by a voidable transaction." *Id.* at 1176. Under the applicable state law, the Second Circuit found that "state law gave [Levine and Wilkins] a property interest in the securities," observing that a

---

law, not state law. *Aquilino*, 363 U.S. at 514 n.5. The Court addresses the issue of lien priority later in this decision.

[6] The Second Circuit's holding was that the district court erred in finding that Levine and Wilkins acquired the assets at issue through wrongful means. 881 F.2d at 1174.

"culpable party to a voidable transaction acquires title, . . . may convey good title to a good faith purchaser[,] . . . and an innocent party's lien may attach to the property in the culprit's possession." *Id.* Thus, the Second Circuit concluded that a tax lien based on a May 1986 assessment attached to the disgorged assets because it arose before Levine and Wilkins disgorged their assets in June 1986. *Id.* at 1176.

Applying that reasoning to the pending case, if Talmage purchased and acquired the RiverCliff Property with embezzled funds, it still became his "property," within the meaning of § 6321. Talmage also acquired title, could convey title to the RiverCliff Property to a bona fide purchaser, and could encumber it. The transactions through which Talmage obtained the funds belonging to the Trust's beneficiaries were voidable, not void. Talmage also resided at and improved the RiverCliff Property. By contrast, the Trust does not allege that its beneficiaries ever acquired title, resided at the RiverCliff Property, or regularly used it for any purpose. Thus, the Court finds that Talmage acquired the RiverCliff Property in 1997, within the meaning of § 6321. The Trust's beneficiaries do not currently have either a resulting or constructive trust over the RiverCliff Property. At most, they have a claim to a constructive trust that might be imposed or recognized in the future.[7]

### 2. RFI as Talmage's Nominee or Alter Ego

Although RFI is the record title owner of the RiverCliff Property, the United States argues that, based on the allegations contained in the Second Amended Complaint, RFI only

---

[7] The United States also argues that the Trust's beneficiaries do not have a claim to a resulting or constructive trust because they could not equitably trace their funds to the RiverCliff Property. The Court need not address this argument because, as discussed below, even if the Court permitted equitable tracing and recognized or imposed an implied trust over the RiverCliff Property in favor of the Trust's beneficiaries, such an implied trust still would not defeat the Government's earlier perfected tax liens. Thus, the Trust still would be unable to quiet title to the RiverCliff Property.

holds legal title to that property as Talmage's nominee or alter ego. If so, the federal tax liens against the Talmages attach to the RiverCliff Property, and the Trust cannot quiet title to that property as a matter of law unless the Trust's interest in that property has priority over the federal tax liens.

"[S]ection 6321 . . . appl[ies] to all property of a taxpayer, including property that is held by a third party as the taxpayer's nominee or alter ego." *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013). The Ninth Circuit has held that the Supreme Court's two-step framework in *Drye* applies to "questions of nominee status." *Fourth Inv. LP*, 720 F.3d at 1068. Thus, courts must conduct "a 'fact-specific state-law inquiry' prior to determining whether a nominee lien may lawfully be enforced as a matter of federal law." *Id.*

"Generally, a business holds an asset as a nominee for a taxpayer when the taxpayer maintains a beneficial interest and exerts control over the asset." *911 Mgmt., LLC v. United States*, 657 F. Supp. 2d 1186, 1194 (D. Or. 2009). "Although Oregon law recognizes the nominee theory, it does not address the factors necessary to determine whether an entity is the nominee of the taxpayer." *United States v. Lehman*, 2016 WL 6902346, at *4 (D. Or. Nov. 23, 2016). Federal courts in Oregon apply the factors identified in *Towe Antique Ford Foundation v. IRS*, 791 F. Supp. 1450 (D. Mont. 1992), *aff'd*, 999 F.2d 1387 (9th Cir. 1993) (affirming on alter ego issue, but declining to reach nominee issue). *See, e.g.*, *Lehman*, 2016 WL 6902346, at *4; *United States v. Edlefsen*, 2014 WL 5149951, at *15 (D. Or. July 23, 2014); *Colby B. Found. v. United States*, 1997 WL 1046002, at *20 (D. Or. Oct. 22, 1997); *cf. Fourth Inv. LP*, 720 F.3d at 1069 (referring to the *Towe* factors as the "uniform set of factors generally recognized by federal courts"). The *Towe* factors are:

> (a) No consideration or inadequate consideration paid by the nominee;

(b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;

(c) Close relationship between transferor and the nominee;

(d) Failure to record conveyance;

(e) Retention of possession by the transferor; and

(f) Continued enjoyment by the transferor of benefits of the transferred property.

791 F. Supp. at 1454. In addition, courts have supplemented the *Towe* factors with the following:

the source of the funds used to purchase the property; . . . the taxpayer's continued use of the property without payment of fair rental value; . . . the taxpayer's continued payment of maintenance charges and real estate taxes; and . . . the taxpayer's acts of holding himself out as the owner of the property.

*Colby B.*, 1997 WL 1046002, at *20. Further, the nominee analysis requires courts to "consider the totality of the circumstances rather than single out the presence or absence of one particular factor." *911 Mgmt., LLC*, 657 F. Supp. 2d at 1194.

The Trust's relevant allegations support the conclusion that RFI was Talmage's nominee. Talmage controlled RFI, SAC ¶ 19, and RFI was not a bona fide purchaser of the RiverCliff Property. SAC ¶ 19. Thus, RFI did not "pa[y] for and acquire[] the [RiverCliff Property] without any knowledge or notice of . . . fraud." *Akins v. Vermast*, 150 Or. App. 236, 241 (1997). After Talmage conveyed title to RFI, he "continued to reside and use the [RiverCliff] Property as his own," and RFI "remained under his control." SAC ¶ 19.

As further evidence of Talmage's continued control over the RiverCliff Property after its conveyance to RFI, Talmage improved that property, albeit with allegedly embezzled funds. *See* ECF 39-1. By contrast, the Second Amended Complaint contains no allegations that challenge the conclusion that RFI is Talmage's nominee. It does not allege, for example, that Talmage

transferred title to RFI for a legitimate purpose or that RFI paid fair value for the RiverCliff Property. Thus, assuming the truth of the well-pleaded factual allegations in the Second Amended Complain, there is no basis to challenge the conclusion that RFI holds legal title to the RiverCliff Property as Talmage's nominee. Thus, the federal tax liens against the Talmages attach to the RiverCliff Property.[8]

### 3. Priority of Interests

Based on the factual allegations in the Second Amended Complaint, the Trust's beneficiaries, at most, have a claim to a constructive trust over the RiverCliff Property that might be judicially established sometime in the future, while the United States currently has federal tax liens on the RiverCliff Property. The Court thus turns to the relative priority of the Trust's and the Government's respective interests.[9]

---

[8] Because the Court finds the allegations of the Second Amended Complaint sufficient to support the conclusion that RFI is Talmage's nominee, it need not consider whether RFI also is Talmage's alter ego. The Court also observes that the Ninth Circuit has not held that a court must conduct "a 'fact-specific state-law inquiry' prior to determining whether an alter ego lien may lawfully be enforced as a matter of federal law." *Fourth Inv. LP*, 720 F.3d at 1068. In *Fourth Investment LP*, however, the Ninth Circuit cited with approval an Eleventh Circuit opinion deciding that this analysis applies to alter ego claims. *See id.* at 1067 n.4 (citing *Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, 605 F.3d 856, 861 (11th Cir. 2010)). The Court finds no material distinction between nominee and alter ego claims that would justify the application of a different analysis to alter ego claims. In order to establish that an individual and a corporation are alter egos under Oregon law, a plaintiff must show that the "defendant was in control of the corporation, that defendant engaged in misconduct, and that that misconduct resulted in plaintiff's inability to collect from the corporation." *Stirling-Wanner v. Pocket Novels, Inc.*, 129 Or. App. 337, 340-41 (1994). The Second Amended Complaint, however, does not contain express allegations sufficient to support the conclusion that Talmage engaged in misconduct resulting in the Government's inability to collect the taxes owed by the Talmages.

[9] The Trust also argues that regardless of any priority analysis, U.S. Department of Justice Tax Directive 137 requires the United States to give priority to the Trust's beneficiaries. That directive, however, is only an internal agency policy regarding enforcement priorities. As such, it does not provide the Trust with any enforceable legal rights. *See United States v. RiverCliff Farm, Inc.*, 2016 WL 6662696, at *2 (D. Or. Nov. 10, 2016).

"[F]ederal law governs the relative priority of federal tax liens and state-created liens."

*Aquilino*, 363 U.S. at 514 n.5. "Absent provision to the contrary, priority [of liens] for purposes

of federal law is governed by the common-law principle that 'the first in time is the first in

right.'" *United States v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. New*

*Britain*, 347 U.S. 81, 85 (1954)). "[T]he federal tax lien is ordinarily dated, for purposes of 'first

in time' priority against . . . competing interests, from the time of its filing, regardless of when it

attaches to the subject property." *Id.* at 454. Under the "choateness" doctrine, courts "deem a

competing state lien to be in existence for 'first in time' purposes only when it has been

'perfected' in the sense that 'the identity of the lienor, the property subject to the lien, and the

amount of the lien are established.'" *Id.* at 449 (quoting *New Britain*, 347 U.S. at 84); *see United*

*States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88-89 (1963). Thus, the choateness doctrine prevents

a state from "affect[ing] the standing of federal liens . . . simply by causing an inchoate lien to

attach at some arbitrary time even before the amount of the tax, assessment, etc. is determined."

*New Britain*, 347 U.S. at 86.

The Trust alleges that the United States assessed taxes against the Talmages and filed

notices of its liens on September 17, 2008; November 28, 2008; May 20, 2013; and January 31,

2014. SAC ¶ 33. Thus, the tax liens are dated "for purposes of 'first in time' priority" as of

January 31, 2014, at the latest. *See McDermott*, 507 U.S. at 454. In order to defeat the tax liens,

the Trust must allege a perfected (or "choate") interest in the RiverCliff Property arising before

January 2014. Because the Trust, at most, has a claim to a constructive trust over the RiverCliff

Property at this time, the Court must determine whether such a claim is a perfected (or choate)

property interest.

Although no published Ninth Circuit opinion has addressed whether a claim to either a resulting or a constructive trust is perfected (or choate) in the context evaluating the priority of a federal tax lien, the Ninth Circuit's unpublished decision in *Loanstar Mortgagee Services LLC v. Barker*, found that such a property interest is inchoate (*i.e.*, not perfected). 282 F. Appx. 572, 574 (9th Cir. 2008) (noting that even if it found it persuasive that property against which the IRS asserted a tax lien should have been held in trust for the plaintiff, "such a trust would have been inchoate" until a court established it and thus would not defeat an earlier perfected tax lien). *Loanstar* also finds support in the Ninth Circuit's appellate bankruptcy law. *See In re N. Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985) (finding that because a constructive trust is an "inchoate remedy," property that "state law might find subject to a constructive trust," but has not been declared part of a constructive trust, does not fall outside the bankruptcy estate). It also finds support in Supreme Court cases, which have held that a federal tax lien has priority over a state lien when the state lienor had not yet obtained a court judgment necessary for the state lien to attach. *See, e.g.*, *Pioneer*, 374 U.S. at 90-91 (finding that a lien for attorney's fees based on a promissory note was inchoate until a court had determined what constituted "reasonable attorney's fees" under the note); *United States v. Sec. Trust & Sav. Bank of San Diego*, 340 U.S. 47, 48, 50 (1950) (holding that "a tax lien of the United States is prior in right to an attachment lien where the federal tax lien was recorded subsequent to the date of the attachment lien but prior to the date the attaching creditor obtained judgment").

 *Loanstar* also cites, with approval, the Sixth Circuit's decision in *Blachy v. Butcher*, 221 F.3d 896 (6th Cir. 2000). In *Blachy*, several plaintiffs sued Mrs. Butcher, the United States, and others, claiming that they "should be declared the legal title holders" of property owned by Mrs. Butcher. *Id.* at 900. The district court imposed a constructive trust over the property and

found that the trust arose in 1978. *Id.* at 901, 902-03. Because the district court found that the trust arose before the United States filed its tax lien against the Butchers in 1988, the district court held that the federal tax lien "was subordinate to" the constructive trust "and therefore ineffective." *Id.* at 901, 903.

The Sixth Circuit affirmed the district court's imposition of a constructive trust, but held that "a judicially-created equitable remedy cannot be applied retroactively to defeat a choate federal tax lien." *Id.* at 906. Noting that under Michigan law, "a 'constructive trust is strictly not a trust at all, but merely a remedy,'" *id.* at 905 (quoting *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.*, 244 N.W. 138, 140 (Mich. 1932)), the Sixth Circuit found that "a constructive trust does not arise until a judicial decision imposes" it. *Id.* The Sixth Circuit further found that the constructive trust could not relate back to 1978 because "[f]ederal law . . . makes no provision for the subordination of a tax lien through the use of the 'relation back' doctrine." *Id.* Because the plaintiffs' "constructive trust claim only became choate when the district court granted judgment in 1998," the Sixth Circuit held, the federal tax liens filed in 1988 had priority over the constructive trust. *Id.* at 906.

The Court finds the Sixth Circuit's analysis of priority persuasive. As in Michigan, Oregon law holds that a constructive trust is a remedy, not an independent substantive claim. *See Evergreen*, 354 Or. at 797 (holding that a constructive trust "does not stand on its own as a substantive claim, but exists solely as an equitable remedy"). Similarly, although the Trust has a recently-obtained judgment against Talmage that might support the imposition of a constructive trust, no court has yet imposed such a trust or found that the Trust has proven such a trust "by strong, clear and convincing evidence." *Albino*, 279 Or. at 550. Further, no court has yet determined the amount held in such a trust. *McDermott*, 507 U.S. at 449. Thus, even if a future

court were to impose a constructive trust over the RiverCliff Property in favor of the Trust's beneficiaries, the federal tax liens would still have priority over that constructive trust.[10]

The Court holds that in the context of a federal tax lien, a claim to a constructive or resulting trust over property is inchoate until it has been judicially imposed or determined. The Court thus concludes that the earlier-filed federal tax liens have priority over the Trust's beneficiaries' inchoate claim to a constructive trust over the RiverCliff Property. Moreover, because the earlier-filed federal tax liens would defeat any choate interest in the RiverCliff Property that the Trust's beneficiaries might obtain in the future, the Trust's beneficiaries cannot quiet title to the RiverCliff Property against the United States as a matter of law.[11]

---

[10] The Trust also discusses several district court opinions in which courts have found that a constructive trust had priority over a federal tax lien, even though the imposition of a constructive trust in those cases occurred after the filing of the tax lien. *See FTC v. Crittenden*, 823 F. Supp. 699 (C.D. Cal. 1993); *Carter v. United States*, 1981 WL 1953, at *5-6 (N.D. Cal. Mar. 27, 1981) (holding that federal tax liens could not attach to property that the taxpayer obtained through "misappropriation" and perpetration of a "ponzi or pyramid scheme" because such property did not belong to the taxpayer); *Atlas, Inc. v. United States*, 459 F. Supp. 1000, 1005 (D.N.D. 1978) (finding that a taxpayer "obtained no rights to any property which was purchased with . . . embezzled funds"); *First Nat'l Bank of Cartersville v. Hill*, 412 F. Supp. 422, 425 (N.D. Ga. 1976) (holding that federal tax liens could not attach to funds that a taxpayer embezzled from a bank because "he obtained no title to or property rights in these funds" or in "any property which was purchased with these funds"); *Dennis v. United* States, 372 F. Supp. 563 (E.D. Va. 1974) (holding that federal tax liens did not attach to property that the plaintiff gave to the taxpayer for the sole purpose of transmitting it to a third party). The Court finds these opinions unpersuasive because they apply outdated, pre-*Craft* case law on property rights and lien priority in the federal tax context, rely on the law of other states, or are otherwise inconsistent with the Ninth Circuit's decision in *Loanstar* and the Sixth Circuit's decision in *Blachy*. The Trust also cites *SEC v. Credit Bancorp, Ltd.*, 138 F. Supp. 2d 512, 515-17 (S.D.N.Y. 2001), *reversed on other grounds sub nom. SEC v. Ray*, 297 F.3d 127 (2d Cir. 2002), which did not consider the relative priority of a claim to a constructive trust and a perfected tax lien because the United States conceded for the purposes of litigation that a constructive trust imposed in the litigation would have priority over its tax lien.

[11] The parties also dispute whether the Trust may obtain fees and costs against the United States if the Trust ultimately were to prevail. Because the Court grants the Government's motion to dismiss, the Court need not address this issue.

**CONCLUSION**

The United States's Motion to Dismiss (ECF 44) is GRANTED.

**IT IS SO ORDERED**.

DATED this 1st day of August, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge